1
2
3
4
5
6
7

8          **UNITED STATES DISTRICT COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA**

10                **SOUTHERN DIVISION**

11

12   DIANE E. Z.,                          Case No. 8:22-cv-02101-BFM

13              Plaintiff,                  **MEMORANDUM OPINION**
                                            **AND ORDER**
14         v.

15   KILOLO KIJAKAZI, Acting
     Commissioner of Social Security,
16
                Defendant.
17

18

19          **I.      PROCEDURAL HISTORY**

20         Plaintiff Diane E. Z.[1] applied for a period of disability and disability

21   insurance benefits, alleging a disability that commenced on June 14, 2016.

22   (Administrative Record ("AR") 32.) Plaintiff's application was denied at the

23   initial level of review and on reconsideration, after which she requested a

24   hearing in front of an Administrative Law Judge. (AR 144-45.) The ALJ held a

25   hearing and heard from Plaintiff and a vocational expert. (AR 76-97.) After that

26   _____

27         [1]  In the interest of privacy, this Memorandum Opinion and Order uses only
     the first name and middle and last initials of the non-governmental party in this
28   case.

hearing, the ALJ issued an unfavorable decision. (AR 32-40.) The ALJ found at step two of the disability analysis[2] that Plaintiff has the severe impairment of vertigo. (AR 34.) He also found Plaintiff has the medically determinable mental impairments of anxiety and depression, but found them, singly and in combination, to be nonsevere.

As relevant to Plaintiff's mental impairments, the regulations describe four criteria used to decide whether an impairment meets or medically equals a Listing—the "paragraph B" criteria. The criteria describe areas of functional abilities on which claimants are evaluated: the ability to understand, remember, or apply information; the ability to interact with others; the ability to concentrate, persist, or maintain pace; and the ability to adapt or manage oneself. 20 C.F.R. pt. 404, subpt. P, app. 1. Applicants are scored in each area and are assessed to have none (no limitation), mild, moderate, marked, or extreme limitation. A mental impairment is deemed not severe at step two if the degree of limitation in each of the four areas is either "none" or "mild," unless the evidence otherwise indicates more than a minimal limitation in a claimant's ability to do basic work activities. 20 C.F.R. § 404.1520a(d)(1). Here, the ALJ found that Plaintiff has a mild limitation in concentration, persistence, and pace, and no limitation in any other area of functional ability. (AR 34-35; *see also* AR 106, 122.) He thus concluded that Plaintiff's mental impairments are nonsevere. (AR 35.)

At step four, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work with several physical limitations, but included no limitations relating to mental capacity. He credited the vocational

---

[2] A five-step evaluation process governs whether a plaintiff is disabled. 20 C.F.R. §§ 404.1520(a)-(g)(1), 416.920(a)-(g)(1). The ALJ, properly, conducted the full five-step analysis, but only the steps relevant to the issue raised in the Complaint are discussed here.

1    expert's testimony that an individual with Plaintiff's RFC could perform her

2    past relevant work as a preschool teacher as that job is generally performed.

3    (AR 36, 39.) The ALJ thus found Plaintiff to be not disabled and denied her

4    claim. (AR 39.) The Appeals Council denied review of the ALJ's decision. (AR 1-

5    6.)

6         Dissatisfied with the agency's resolution of her claim, Plaintiff filed a

7    Complaint in this Court. She argues that the ALJ erred at step four because he

8    failed to include Plaintiff's mild mental limitation in concentration, persistence,

9    and pace in his residual functional capacity determination and in his

10    hypotheticals to the vocational expert. (Pl.'s Br. at 8.)

11

12                   **II.**     **STANDARD OF REVIEW**

13         Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision

14    to deny benefits to determine if: (1) the Commissioner's findings are supported

15    by substantial evidence; and (2) the Commissioner used correct legal standards.

16    *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008);

17    *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012).

18    "Substantial evidence . . . is 'more than a mere scintilla.' It means—and only

19    means—'such relevant evidence as a reasonable mind might accept as adequate

20    to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)

21    (citations omitted); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th

22    Cir. 2014) (internal quotation marks and citation omitted). To determine

23    whether substantial evidence supports a finding, the reviewing court "must

24    review the administrative record as a whole, weighing both the evidence that

25    supports and the evidence that detracts from the Commissioner's conclusion."

26    *Reddick v. Chater*, 157 F.3d 715, 710 (9th Cir. 1998).

27

28

3

1

### III.   DISCUSSION

2    The only question this case presents is whether the ALJ erred in failing

3    to properly account for Plaintiff's mild limitation in her ability to concentrate,

4    persist, and maintain pace, at step four and beyond—specifically, when he

5    assessed Plaintiff's residual functional capacity and when he presented

6    hypotheticals to the vocational expert. For the reasons set forth below, the Court

7    determines that the ALJ's decision must be reversed.

8    The crux of the case is this: The ALJ found at step two that Plaintiff had

9    a mild limitation in her ability to concentrate, persist, and maintain pace. (AR

10    35.) That mild limitation did not warrant a finding that Plaintiff had a severe

11    impairment at step two. The ALJ's analysis was proper through step two, and

12    Plaintiff does not argue otherwise.

13    Under governing law, however, an ALJ must consider the impact of all

14    impairments on a claimant's RFC, whether they were deemed severe or not

15    severe at step two. *See* 20 C.F.R. § 404.1545(a)(1)-(2), (e); SSR 96-8p, 1996 WL

16    374184, at *5 (July 2, 1996). That is, impairments and any limitations they may

17    cause do not drop out of the analysis simply because the impairment was

18    deemed nonsevere at step two. The problem in this case is that it is impossible

19    to say what the ALJ did to account for his finding at step two that Plaintiff was

20    mildly limited in her ability to concentrate, persist, and maintain pace.

21    In describing his step two analysis, the ALJ explained, correctly, that the

22    paragraph B criteria "are used to rate the severity of mental impairments at

23    steps 2 and 3 of the sequential evaluation process" and "are not a residual

24    functional capacity assessment."   (AR 36.) In other words, the findings of a

25    limitation at step two will not necessarily be reflected in the RFC assessment at

26    step four. The ALJ also correctly noted that "the mental residual functional

27    capacity assessment used at steps 4 and 5 requires a *more detailed* assessment."

28

1    (AR 36 (emphasis added).)

2          But that "more detailed assessment" never came. The ALJ stated that he

3    "considered all of [Plaintiff's] medically determinable impairments, including

4    those that are not severe" and that the RFC assessment reflected "the degree of

5    limitation [he] found in the 'paragraph B' mental functional analysis." (AR 36.)

6    Apart from that boilerplate assurance, the ALJ's decision does not reflect any

7    analysis of how Plaintiff's nonsevere mental impairments and her mild

8    limitations in concentration, persistence, and pace factored into the RFC

9    determination. Nor does the ALJ's ultimate statement of Plaintiff's RFC contain

10   any nonexertional limitations. (AR 36.) Thus, it is not clear to this Court

11   whether the ALJ considered his step two finding of a mild limitation in

12   concentration, persistence, and pace and had a good reason for concluding that

13   it did not affect Plaintiff's RFC, or whether he forgot about that mild limitation

14   all together.

15         The Ninth Circuit found error on similar facts in *Hutton v. Astrue,* 491 F.

16   App'x 850, 850 (9th Cir. 2012) (unpublished); that case, while not controlling

17   precedent, sets out a persuasive analysis. The step two analysis in *Hutton*

18   looked similar to the analysis conducted here: the ALJ determined that the

19   plaintiff had the medically determinable impairment of PTSD, and mild

20   limitations in the area of concentration, persistence, or pace. *Id.* Because that

21   was the only area of functional limitation, the ALJ classified plaintiff's PTSD as

22   nonsevere. *Id.* At step four, the ALJ decided to disregard Hutton's own

23   testimony, his treating physician's opinions, and the VA's disability rating.

24   Based on the totality of the record, the ALJ found his PTSD claims were in great

25   doubt. *Id.* The ALJ then excluded Hutton's PTSD claims from consideration. But

26   the ALJ never revisited the mild limitations in concentration, persistence, and

27   pace that the ALJ *had already determined* were caused by Hutton's PTSD at

28

5

step two of his analysis. *Id.* He did not explain why that finding at an earlier stage had no impact on his assessment of Plaintiff's residual functional capacity.

The Ninth Circuit explained that "[t]o determine [plaintiff's] RFC properly, the ALJ was required to consider Hutton's physical impairments and the 'mild' limitations his PTSD caused with concentration, persistence, or pace." *Id.* at 850-51. While the ALJ "was free to reject Hutton's testimony as not credible, there was no reason for the ALJ to disregard his own finding that Hutton's nonsevere PTSD caused some 'mild' limitations in the areas of concentration, persistence, or pace." *Id.* at 851.

Following *Hutton*, several courts have found reversible error where the ALJ failed to adequately address how mild mental impairment limitations found at step two affected the assessment of RFC conducted at step four. *See Frary v. Comm'r of Soc. Sec.*, No. 1:20-cv-00260-SAB, 2021 WL 5401495, at *10-12 (E.D. Cal. Nov. 17, 2021) (compiling case law reversing based on *Hutton*).

This is not a question of form, but of substance. Thus, where courts can tell that the ALJ actually conducted the proper analysis and considered whether any impairments found at step two should be accounted for in the RFC assessment, it does not matter whether the analysis happens in the part of the decision discussing step two or the part of the decision discussing step four. What matters is that the Court can confirm that the proper analysis actually occurred.

In *Frary*, for example, the court distinguished *Hutton*. It found that the ALJ "completed a significant discussion" of the claimant's mental impairments when finding only mild limitations at step two. *Frary*, 2021 WL 5401495, at *18. After step two, in his RFC determination, the ALJ had also considered evidence relating to the claimant's mental impairments in a "reasoned" manner, which included "discussion of the mental status examinations, mental limitations

demonstrated during the hearing, and daily activities," as well as evidence pertaining to "stable psychological functioning." *Id*. The court specifically noted that this "reasoned further discussion in conjunction with the express incorporation of step two findings within the residual functional capacity," distinguished it from those cases finding error under *Hutton*.

What is not enough, however, is "a hollow boilerplate incorporation of the paragraph B criteria within the RFC discussion," without more *Id*. at *19. Instead what is required is that the ALJ actually review the record and specify reasons supported by substantial evidence for not including the non-severe impairment in the ultimate RFC determination. *Gates v. Berryhill*, No. ED CV 16-00049 AFM, 2017 WL 2174401, at *2-3 (C.D. Cal. May 16, 2017).

In this case, the ALJ's analysis did not fulfill his obligations to assess Plaintiff's nonsevere impairments and mild limitations in concentration, persistence, and pace when formulating Plaintiff's residual functional capacity—not the analysis conducted at step two, and not the analysis conducted at step four.

At step two, the ALJ considered the evidence supporting a limitation in concentration, persistence, and pace. He addressed the report of consulting examiner Dr. Kim, who stated that Plaintiff "denied difficulty with concentration and memory." But, the ALJ then noted, the two agency reviewers, Dr. Weiss and Dr. Brode, opined mild limitation with respect to concentrating, persisting, or maintaining pace. Such a limitation is "consistent with [Plaintiff's] lack of mental health treatment and history." (AR 35, 36 (citations omitted).) As such, the ALJ found a mild limitation in concentration, persistence, and pace for purposes of step two. The ALJ did not, in that section of his decision, discuss any functional limitations that might flow from that finding.

After discussing all four Paragraph B criteria, the ALJ reviewed in more

detail the report of consultive examiner Dr. Kim. Dr. Kim reported that Plaintiff complained of anxiety and PTSD. Plaintiff claimed she received Valium for a short period from her primary care physician, but had generally refused mental health care and instead sought out counseling from her church leadership. She denied any prior inpatient or outpatient psychiatric treatment. (AR 35 (citing AR 372).) Dr. Kim observed that Plaintiff's mood was anxious, and he diagnosed her with unspecified anxiety disorder. (AR 36 (citing AR 373, 374, 375).) Dr. Kim opined that Plaintiff had moderate limitations in her daily activities, but the ALJ found that opinion to be unpersuasive, based on Plaintiff's description of her daily activities and the opinions of the two agency consultants, Dr. Weiss and Dr. Brode.

Importantly, Dr. Kim's report made a separate finding: that Plaintiff was mildly limited in her abilities to respond to changes in a routine work setting and to work pressure—limitations arguably related to the abilities to maintain concentration, persistence, and pace, and ones that arguably translate fairly directly into limits that might be included in a residual functional capacity assessment. (AR 375.) The ALJ did not address that finding anywhere in his order. Nor did the reasons he gave for rejecting Dr. Kim's other opinion, the one regarding Plaintiff's ability to carry on activities of daily living, undermine this separate conclusion about Plaintiff's ability to respond to changes and to work pressure.

In short, in no part of the step two analysis did the ALJ discuss whether the finding of mild limitations in the ability to concentrate, persist, and keep pace should be reflected in the residual functional capacity.

At step four, the ALJ did not revisit the findings of Dr. Kim, Dr. Weiss, or Dr. Brode, the three doctors whose assessments led the ALJ to note the existence of a mild limitation at step two. Instead, the step four analysis focuses

1  primarily on Plaintiff's physical impairments. In describing the other evidence
2  in the record, however, the ALJ reported a steady drumbeat of reports of
3  anxiety. (AR 35 (Plaintiff's testimony that she cannot work due to anxiety and
4  PTSD) (citing AR 229-37, 273-81)); (AR 37 (annual exam in February 2020 in
5  which doctor noted anxiety disorder, and reported that Plaintiff was hesitant to
6  start therapy or medications) (citing AR 393-96)); (AR 37 (treatment for vertigo-
7  related fall; Plaintiff noted to have anxious effect) (citing AR 391-92)); (AR 38
8  (neurology consult in October 2020 during which Plaintiff reported she felt
9  "anxious, and not depressed, but she had not seen a psychologist" (citing 382-
10 84)); (AR 38 (January 2021 telemedicine appointment in which Plaintiff said she
11 was "stressed and anxious" with intermittent headaches (citing AR 386)).)

12         Apart from noting these frequent reports of anxiety, the ALJ does not
13 address Plaintiff's mental impairments in any way. The ALJ neither includes
14 any limitations in the RFC that address Plaintiff's mild limitation in
15 concentration, persistence, and pace, nor does he describe why that mild
16 limitation does not affect Plaintiff's RFC. Apart from his boilerplate assertion,
17 there is no indication that the ALJ properly considered Plaintiff's medically
18 determinable mental impairments of anxiety and depression and mild
19 limitations in concentration, persistence, and pace when assessing her RFC.
20 This case is thus analogous to those cases finding error under *Hutton*. *E.g.*,
21 *Sylvester H. v. Kijakazi*, No. 5:20-cv-02503-SP, 2022 WL 4466717, at *8 (C.D.
22 Cal. Sept. 26, 2022); *Smith v. Colvin*, No. 14-cv-05082-HSG, 2015 WL 9023486,
23 at *9 (N.D. Cal. Dec. 16, 2015).

24         Defendant's contrary arguments are not persuasive. Plaintiff's argument
25 is not that the ALJ *has* to include any limitations found by any doctor into the
26 RFC, or that the ALJ *has* to reflect mild limitations found at step two into the
27 RFC. (Def't Br. at 4, 6.) But having found the existence of an impairment that
28

9

1  mildly limits a claimant in some way, the ALJ does have to show his work as to

2  why that limitation has no bearing on the RFC. Because there is no indication

3  that the ALJ did so here, the ALJ erred.

4      Defendant relies on *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022), and

5  suggests that there, the Court found that an RFC for light work "reasonably

6  accommodated the claimant's two mild limitations in the 'paragraph B criteria'

7  of understanding, remembering, or applying information and of concentration,

8  persistency, or maintaining pace." (Def's Br. at 5 (internal quotation marks

9  omitted).) That argument reads far too much in *Woods*. *Woods* primarily

10  addresses a different question—whether an amendment to a regulation affected

11  how an ALJ must handle analyze certain medical opinions. *Id.* at 789-94. At the

12  tail end of that discussion, the Ninth Circuit noted that the ALJ's RFC

13  assessment "expressly reflected" the limitations found at step two. The plaintiff

14  "did not identify any particular evidence that the ALJ failed to consider." *Id.* at

15  795. And indeed, the Court noted, the ALJ both explicitly considered and gave

16  reasons for rejecting more severe limitations offered by one doctor, and also gave

17  reasons for finding that the broader record did support greater limitations. *Id.*

18  at 794. *Woods* does not hold that an RFC for light work will always be adequate

19  to address mild limitations found at step two, but instead reaffirms the

20  principles described here—that the ALJs should be affirmed where they show

21  their work, and their reasons are supported by substantial evidence.

22      Nor can the Court conclude that the error was harmless. The vocational

23  expert opined that Plaintiff could continue her work as a preschool teacher,

24  "skilled" work, "SVP 7."[3] (AR 94.) As Plaintiff argues, highly skilled jobs are

25

26      [3] "SVP" stands for specific vocational preparation score, and reflects the level

27  of training generally required for the job. *Terry v. Sullivan*, 903 F.2d 1273, 1276
   (9th Cir. 1990). Unskilled jobs correspond to an SVP of 1-2; semi-skilled jobs

28  (cont'd . . .)

1   more likely to be impacted by limitations, even mild ones, in mental capacity.

2   Had the ALJ decided to incorporate any limitation in the RFC to account for

3   Plaintiff's mild impairment in concentration, persistence, and pace, it may well

4   have affected the vocational expert's opinion that she could return to her prior

5   work.

6        In this respect, it is notable that the vocational expert was asked whether

7   there would be work for an individual who was off task "more than 10% of the

8   workday"—a question arguably related to the ability to maintain concentration,

9   persistence, and pace. The vocational expert opined that an individual who was

10  off task more than 10% of the workday would exceed the tolerance of employers,

11  especially as that percentage approached 15%. (AR 95.) That answer strongly

12  suggests that if the ALJ had decided that some modification in the RFC was

13  appropriate based on Plaintiff's mild limitation, it might have affected the ALJ's

14  hypotheticals and the vocational expert's answers.

15       On this record, though, the Court is unable to determine how the ALJ

16  would have translated the mild limitation to the RFC, and how the vocational

17  expert would have testified had the specific mild limitations in concentration,

18  persistence, and pace been reflected in the hypotheticals posed to the vocational

19  expert. As such, the Court cannot confidently say this error was harmless.

20

21              **IV.   REMAND FOR FURTHER PROCEEDINGS**

22       Remand is appropriate as the circumstances of this case suggest that

23  further administrative proceedings could remedy the ALJ's errors. *See*

24  *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district

25  court concludes that further administrative proceedings would serve no useful

26  _____

27  correspond to an SVP of 3 to 4; and skilled jobs correspond to an SVP of 5 to 9.
    Soc. Sec. Ruling 004-0p, 2000 WL 1898704, at *3 (Dec. 4, 2000) (citing 20 C.F.R.
28  §§ 404.1568, 416.968).

purpose, it may not remand with a direction to provide benefits."); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101, n.5 (9th Cir. 2014) (remand for further administrative proceedings is the proper remedy "in all but the rarest cases"); *Harman v. Apfel*, 211 F.3d 1172, 1180-81 (9th Cir. 2000) (remand for further proceedings rather than for the immediate payment of benefits is appropriate where there are "sufficient unanswered questions in the record").

## V.  CONCLUSION

For all the foregoing reasons, **IT IS ORDERED** that:

(1) the decision of the Commissioner is **REVERSED** and this matter **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Memorandum Opinion and Order; and

(2) Judgment be entered in favor of Plaintiff.

DATED: November 6, 2023    _____

BRIANNA FULLER MIRCHEFF
UNITED STATES MAGISTRATE JUDGE

12